UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY JOHNSON MOORE,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-825

Beckwith, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Kimberly Johnson Moore filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On November 21, 2005, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of September 3, 2005, due to spinal stenosis, carpal tunnel syndrome, bi-polar mood disorder, and mental illness. (Tr. 54-58, 68, 536-537). She was 34 years old at the time of her alleged disability. (Tr. 75, 550). After Plaintiff's claims were denied initially and upon reconsideration (Tr. 26-35, 538-545); she requested a hearing *de novo* before an

Administrative Law Judge ("ALJ"). (Tr. 36). On December 5, 2008, and January 30, 2009, evidentiary hearings were held at which Plaintiff was represented by counsel. (Tr. 546-579, 580-609). At both hearings, ALJ James I.K. Knapp ("ALJ Knapp") heard testimony from the Plaintiff. Eric Pruitt, a vocational expert, testified at the first hearing. Mary Buban, a clinical psychologist, testified at the second hearing.

On February 13, 2009, ALJ Knapp entered his decision denying Plaintiff's SSI and DIB applications. (Tr. 5). The Appeals Council denied his request for review. (Tr. 1E-3). Therefore, ALJ Knapp's decision stands as the Defendant's final determination.

ALJ Knapp's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 2010.

2. The claimant has not engaged in substantial gainful activity since September 3, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following impairments which are severe for Social Security purposes: 1) lumbar and cervical degenerative disc disease; 2) dominant right carpal tunnel syndrome residuals; and 3) a generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

   ……………………

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925, and 416.926).

   ……………………

5. After careful consideration of the entire record, the undersigned finds that the claimant lacks the residual functional capacity to: 1) lift more than ten pounds frequently or twenty pounds occasionally; 2) do any job where she is not free to alternate sitting and standing at thirty minute intervals throughout the work day; 3) crawl or climb ladders or scaffolds; 4) crouch,

2

     stoop, or kneel more than occasionally; 5) reach above shoulder level more than occasionally; 6) use the dominant hand for greater than frequent handling or fingering; 7) do any work at unprotected heights or around moving machinery; 8) have greater than occasional contact with the public, supervisors, or co-workers; 9) follow complex instructions; or 10) do other low stress work activity (i.e., no job involving fixed production quotas, or otherwise involving above average pressure for production work that is other than routine in nature, or work that is hazardous).

     ……………………

6. The claimant is not capable of performing her past relevant work as a fast food worker, labeler, or material handler. (20 CFR 404.1565 and 416.965).

     ……………………

7. The claimant was born on September 17, 1964 and is 44 years old, and is classified as a younger individual (20 CFR 404.1563 and 416.963).

8. The claimant has an 8th-grade, limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

     ……………………

9. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(Tr. 12-21). Thus, ALJ Knapp concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB. (Tr. 22).

     On appeal to this Court, Plaintiff maintains that ALJ Knapp erred by: 1) improperly dismissing the findings of treating physicians; and 2) inadequately assessing Plaintiff's pain and credibility. (Doc. 6).

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the Court should consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency ("SSA") is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. §404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. §423(d)(1)(A). In this case, Plaintiff alleges that the identified errors at the fifth step of the sequential analysis require this Court to reverse the Commissioner's decision.

### B. The ALJ's rejection of Treating Physicians' Opinions

In her first assignment of error, Plaintiff complains that ALJ Knapp failed to afford adequate weight to the opinions of Plaintiff's following treating physicians: Dr. Ahmed,

5

her orthopedist, and Dr. Onady, her psychiatrist. 20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2). Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

**1. Dr. Ahmed**

On June 17, 2005, Dr. Ahmed, an orthopedist, completed a Residual Functional Capacity evaluation ("RFC") on Plaintiff's behalf. (Tr. 440-444). On that form, Dr. Ahmed opined that Plaintiff could sit for 4 hours in an 8 hour work day and stand/walk for less than 2 hours of an eight hour workday, with a sit/stand option. (Tr. 441-442). Dr. Ahmed also noted that during an 8 hour work day Plaintiff would need unscheduled breaks 2 to 3 times a day for 10 to 15 minutes in duration. (Tr. 442). Plaintiff could use her hands for repetitive motion tasks, and she could use her feet for operating foot

6

controls. (Tr. 444). Plaintiff could lift/carry less than ten pounds occasionally and could not bend or twist at the waist. (Tr. 442). Plaintiff also was restricted from stooping, climbing, or crouching. (Tr. 444). Dr. Ahmed further opined Plaintiff should avoid moving machinery and exposure to excessive vibrations. (*Id.*). Dr. Ahmed attributed these severe restrictions to Plaintiff's cervical spine strain and spondylosis of the lumbosacral spine with facet joint arthropathy and a L4/L5 disc prolapse. (Tr. 440).

In his decision, ALJ Knapp rejected Dr. Ahmed's assessment of Plaintiff's postural limitation:

> [T]he degree of restriction proposed by Dr. Ahmed would seem excessive in view of the absence of any focal deficit of motor power or reflexes, and the generally conservative nature of her treatment. It is also notable that the claimant had not gone to physical therapy or for chiropractic treatment. Other examining physicians, such as Dr. Arand and Dr. Nassef, had not suggested any surgical type lesions. And while the most recent MRI and EMG findings suggest somewhat more significant pathology than previously reported, the claimant still retains normal strength and there is no indication that spinal surgery is needed. Most important for our purposes, the opinion was rendered back in June 2005, almost four years ago, and is clearly dated as this point.

(Tr. 18-19). Plaintiff contends that the limitations found by Dr. Ahmed were supported by ample objective evidence, including: June 2004 EMG findings that showed evidence of S1 radiculopathy and the possibility of spinal stenosis (Tr. 154); and a June 2004 RFC, completed by Dr. Sliwinski, that noted Plaintiff was capable of lifting only 5 pounds, standing and/or walking for only 1 hour in an 8-hour workday and sitting only 1 hour in an 8-hour workday. (Tr. 151). However, although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner." 20 C.F.R. §404.1527(d)(2), §1527(e)(2).

In rejecting the limitations assessed by Dr. Ahmed, ALJ Knapp explained that,

7

"the pessimistic opinion of Dr. Ahmed providing that any permanent work-related restrictions are warranted is inconsistent with the record as a whole." (*See* Tr. 19). ALJ Knapp went on to point out that Dr. Ahmed's assessment of Plaintiff's functional abilities is not well supported by detailed medical findings and is not compatible with other substantial evidence when viewed in the context of the entire record. (*Id*). By way of example, ALJ Knapp provided that Plaintiff, with her impairments continued to engage in criminal behavior, including, participating in: frequent physical altercations, public intoxication, disorderly conduct, illegal narcotic use, and multiple traffic offenses. (Tr. 16.). ALJ Knapp's rejection of Dr. Ahmed's assessment satisfies the "good reasons" requirement. The extreme limitations found by Dr. Ahmed are not supported by objective medical evidence. Rather, I conclude from a review of the same medical records that substantial evidence supports ALJ Knapp's assessment.

The record does reflect a diagnosis of lumbar and cervical degenerative disc disease, dominant right carpal tunnel syndrome residuals, and a generalized anxiety disorder; however, the record does not support Dr. Ahmed's assessment of Plaintiff's negative functional abilities. A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009).

Medical examiners and treatment providers repeatedly noted that neurological findings on examination were completely within normal limits and cited that, upon observation, Plaintiff walked without a limp and that she reported no bowel or bladder dysfunction. (Tr. 139, 168, 172, 173, 177, 215, 249). Specifically, Plaintiff's neurologist,

8

Dr. Yashon, stated that a July 2004 MRI of Plaintiff's lumbar area was normal with no evidence of disc protrusion. (Tr. 168). Dr. Arand and Dr. Nassef, consulting physicians, also noted that Plaintiff's medical history, EMG reports, CT scans, and MRI films, demonstrated only mild degenerative disc disease without any actual disc herniation or stenosis and as a result, saw no indication that she needed spinal surgery. (Tr. 249--251, 260).

ALJ Knapp does acknowledge that although recent MRI and EMG studies, completed in 2008, have suggested some nerve root compression and radiculopathy involving both the neck and back, physical examinations have revealed no focal weakness. (Tr. 459-463). Moreover, prior to the December 2008 diagnostic evaluations, MRI findings had not been clear-cut for significant pathology. On March 28, 2005, an MRI of Plaintiff's cervical spine suggested mild degenerative disc disease and no central canal stenosis. (Tr. 281). On October 20, 2005, an MRI of the cervical spine revealed mild spondylotic changes at the C5-C7 with moderate central canal narrowing but without definite impingement of the spinal cord. (Tr. 264-265). Further, in February 2005 Plaintiff experienced successful results from carpal tunnel surgery with no evidence of ulnar nerve damage. (Tr. 270-271).

In addition, ALJ Knapp explains that the extreme limitations Dr. Ahmed detailed in his 2005 assessment were inconsistent with statements made by Plaintiff that she was able to: obtain public housing and live independently; take care of two children; carry out routine household chores including the laundry, cooking, sweeping, and vacuuming; maintain personal hygiene, make visits outside of her home, use the computer, and do crossword puzzles. (Tr. 183, 550-551, 560-562). *See* 20 C.F.R.

§404.1527(d)(4) ("*Consistency.*" Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Even if the Court were to assume that Dr. Ahmed's opinions were consistent with other record evidence, it is not necessarily enough to warrant reversal; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Specifically, Dr. Ahmed failed to provide a detailed explanation as to his extreme limitations in view of the absence of any focal deficit of motor power or reflexes, and the generally conservative nature of Plaintiff's treatment. The Court also finds it important to note that Dr. Ahmed failed to put in his explanation that Plaintiff had not actively pursued physical therapy or chiropractic treatment. (Tr. 27). *See* 20 C.F.R. §404.1527(d)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Ahmed simply checked boxes indicating that Plaintiff's ability to sit, stand and walk was affected. (Tr. 442). He also checked that due to Plaintiff's impairments her pushing and pulling abilities were limited, but gave no reasons why he believed this to be so. (*Id.*). Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### 2. Dr. Onady

Plaintiff asserts that ALJ Knapp additionally erred in rejecting the opinion of her treating psychiatrist, Dr. Onady, that she was disabled. She alleges that "Dr. Onady diagnosed bipolar disorder and panic disorder with agoraphobia" which diagnoses ALJ Knapp improperly ignored. (Doc. 6 at 15).

Prior to addressing Plaintiff's arguments, the Court notes that ALJ Knapp did not,

10

in fact, completely reject Dr. Onady's opinions. Although ALJ Knapp did not find objective medical evidence to support a *diagnosis* of bipolar disorder and panic disorder with agoraphobia, ALJ Knapp determined that Plaintiff's impairments included *symptoms* of bipolar disorder and extreme panic but carefully explained that merely generalized anxiety is Plaintiff's predominant issue. (Tr. 15). This determination was based on Plaintiff's negative reaction towards stress and the appearance that her anxiety manifested itself through anger, irritability and criminal behavior. (Tr. 15). ALJ Knapp also considered Dr. Chiappone's consultative psychological evaluation in making his determination. Dr. Chiappone's evaluation provided that although Plaintiff had some difficulties with concentration and pace, she was still able to carry out routine activities of daily living and exercise responsibility for her children. (Tr. 185).

In a May 2007 assessment of Plaintiff's mental abilities, subscribed by Dr. Onady, it indicated that Plaintiff was markedly limited in social functioning and the ability to maintain concentration, persistence, or pace, and that she had continual episodes of mental deterioration or decompensation. (Tr. 314-315). The assessment also provided that Plaintiff was considered to be severely limited in relating to supervisors and co-workers, maintaining production levels, working in an emotionally stable manner, and handling work pressures. (Tr. 315-317). Glaringly absent from Plaintiff's assessment, however, is a reference to any objective medical evidence to support the claimed diagnoses.

Specifically, the assessment appears to have been based on what the "client reports," that is, the subjective allegations of Plaintiff. However, these subjective allegations were likely heavily influenced by Plaintiff's frequent anger, irritability and

11

criminal behaviors, and thus, not entirely credible. For instance, progress notes imply that, throughout treatment, Plaintiff abused narcotic medication, did illegal drugs with her daughter, and exhibited suicidal ideation. (Tr. 291, 294, 299, 325, 330-331, 369). In addition, Plaintiff often failed to appear for treatment sessions and cancelled many appointments. (Tr. 310, 325-329, 333-334, 336, 339, 347, 349, 354, 356-359, 361-367, 388, 417-418). The Court also notes that on the occasions when Plaintiff actually did show up for counseling little clinical information is provided in the treatment records.

Plaintiff further argues that Dr. Onady's opinion should be given significant weight because it is consistent with examining physician Dr. Swift's evaluation. (Doc. 6 at 16). Dr. Swifit opined that: Plaintiff was "extremely" limited in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and was "markedly" limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 438). Dr. Swift also opined that continued mental health treatment "may" be effective within 9-11 months. (Tr. 439).

However, Dr. Swift's report was based on a one-time visit by Plaintiff after her case had been closed by Dr. Onady. The assessment was also based on Plaintiff's subjective reports as to her symptoms and abilities. (Tr. 439). For example, the assessment relied on Plaintiff's report of panic attacks and agoraphobic behavior, however, the record indicates that Plaintiff was able to leave home and function without panic attacks or agoraphobia on a regular basis. (Tr. 550-551, 560-562).

ALJ Knapp's explanation for rejecting Dr. Onady's diagnoses is supported by

12

substantial evidence and satisfies the "good reasons" requirement.  In rejecting said diagnoses ALJ Knapp properly recognized that the variations in Plaintiff's moods could be better explained by her criminal behavior, anxiety and poor tolerance for stress rather than being symptomatic of any profound depression or manic behavior qualifying her for true bipolar or any other mood disorder.  (*See* Tr. 16).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### C. Credibility Assessment and Evaluation of Pain

Plaintiff's second statement of error finds fault with ALJ Knapp's conclusion that her testimony was not entirely credible.  Specifically, Plaintiff claims that ALJ Knapp failed to consider all the factors listed in 20 C.F.R. §§404.1529, 416.929 and Social Security Ruling 96-7p.  With respect to her subjective complaints of back pain, neck pain, depression, and anxiety, Plaintiff alleges that ALJ Knapp failed to adequately consider Plaintiff's symptoms and testimony to the extent that they purported to describe a condition of a disabling nature.  (Doc. 6 at 17).  Plaintiff also argues that ALJ Knapp erroneously relied upon Plaintiff's poor counseling attendance records, alleged drug-seeking behavior and functional ability to care for herself and two children in assessing her lack of credibility.  (*Id.*).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d at 475.  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id* at 476.  (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's

findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Thus, it can be proper for an ALJ to discount the claimant's testimony. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

In this matter, ALJ Knapp noted various factors in his decision which caused him to question Plaintiff's credibility. For instance, he noted that Plaintiff has not always been fully compliant with treatment – refusing and declining services, often failing to appear for treatment sessions and cancelling many appointments. (Tr. 310, 325-329, 333-334, 336, 339, 347, 349, 354, 356-359, 361-367, 388, 417-418). She has tested positive for illegal drugs, (i.e., cocaine), demonstrated drug-seeking behaviors (i.e., specifically requesting narcotics), and she reportedly engages in a wide variety of activities which appear inconsistent with a totally debilitated individual such as cleaning, taking care of two children; cooking, using the computer, completing crossword puzzles, and traveling outside of her home. (Tr. 253, 550-551, 560-562, 597-598). Plaintiff also related that she remains independent in caring for her personal care needs despite her allegations of severe weakness and fatigue. (Tr. 183).

ALJ Knapp found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that the recent MRI studies do document a degree of degenerative disc disease that could produce pain or discomfort. (Tr. 17). However, in reviewing Plaintiff's multiple RFC assessments, ALJ

Knapp also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with said assessments. (Tr. 16).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Here, ALJ Knapp noted that objective tests including MRI and EMG findings showed minor and completely normal results. (Tr. 15). In addition, ALJ Knapp specifically recognized that, in regards to her back pain, there was only mild degenerative disc disease and there was no central canal stenosis. (Tr. 13).

Therefore, because ALJ Knapp found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of her pain and limitations, it was permissible for him to discredit Plaintiff's testimony about the severity of her symptoms. As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Knapp's decision to discredit Plaintiff's statements about the severity of her symptoms.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be closed

*s/Stephanie K. Bowman*
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY JOHNSON MOORE,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-825

Beckwith, J.
Bowman, M.J.

## **NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).